```
              UNITED STATES DISTRICT COURT
                DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA    )
                            )    CRIMINAL NO. 04-10027-PBS
     v.                     )
                            )
MATTHEW VICKERS             )
```

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S
### MOTION TO SUPPRESS (SEARCH AND SEIZURE)

The government respectfully responds herewith to Defendant's Motion to Suppress (Search and Seizure)(the "Motion"). For the reasons that follow, this Court should deny the Motion.

### FACTS

The relevant facts arise from incidents occurring on two different dates: May 14, 2001, and October 19, 2003. Materials relating to these incidents, including Boston Police Department ("BPD") incident reports and state grand jury testimony, are appended to the Motion as Addenda A-E, as is the defendant's own affidavit. Because the government believes that the Motion is readily resolved based on a few salient facts, the government provides here a summary of what transpired. The government reserves the right to adduce additional facts and details in the event an evidentiary hearing is held.

### May 14, 2001

At around 7:25 p.m. on May 14, 2001, BPD Officers Mills, Bordley, and Brown were patrolling in an unmarked car when they observed a white car they had stopped about a week earlier

traveling in the opposite direction.  The operator of that car had been directed to clear up a warrant, and, wishing to see whether this had been done, the officers turned left to try to head off the white car.  They ended up on Monadnock Street behind two other cars, one of which was a blue Honda Civic.  The officers had their siren and emergency lights activated, but, while one of the cars pulled over, the blue Honda did not.  The officers saw the white car they were seeking to catch pass by on Dudley Street and tried to get around the Honda to pursue the white car, but the Honda cut them off, turning left onto Dudley.  The officers, with the emergency apparatus still operating, now decided to follow the Honda.  It still did not pull over but instead turned onto Magnolia Street then into Magnolia Square, a dead end.

There it finally stopped, but out in the middle of the street, with the engine still running.  The driver jumped out, and the officers recognized him as the defendant, Matthew Vickers.  The defendant started to run, and, as he did so, he discarded a plastic bag.  The bag contained what appeared to be crack cocaine (and, while subsequent tests did not show the presence of cocaine base, they did confirm that the substance contained cocaine).

The officers then caught the defendant near a fence and placed him under arrest.  He was charged with failing to pull to

the right for an emergency vehicle, refusal to submit, operating after the suspension of a license, and trafficking in a class B substance.  The police recovered from the defendant $80.00 in U.S. currency; a Motorola cellular telephone; and a pager.  The defendant requested to make a telephone call, and, during the ensuing conversation, the officers overheard him saying that he was "caught with a 6-2," which the officers took to be a reference to 62 grams of crack.

The defendant provided his own version of events in his affidavit.  Among other things, he stated that he was driving on Monadnock Street on the evening in question; that he saw an unmarked police vehicle pull up behind him; that he saw the police activate their blue lights (the defendant stated "to stop me," although his basis for so stating is not evidence from his affidavit); that he made three turns without stopping for the police; that at Magnolia Square, he got out of the Honda and ran from the police; that they caught him and placed him under arrest; and that they produced a bag of cocaine that they said the defendant had dropped.  (The defendant does not dispute that he did so drop the bag.)

**October 19, 2003**

On October 19, 2003, at approximately 3:00 a.m., BPD Officer James Coyne was attempting to respond in a marked cruiser to a priority call concerning a robbery that had occurred in Roxbury.

Another marked cruiser also attempting to respond to the call ended up directly behind Officer Coyne on Normandy Street. Officer Coyne had his siren activated, and both cruisers had their emergency lights activated.

As they were driving, a red Honda pulled directly in front of Officer Coyne's cruiser.  Officer Coyne employed his air horn, in addition to the siren and flashing lights, to alert the driver to yield, but the driver did not do so.  The driver instead continued in front of the cruisers for at least four blocks, despite opportunities to pull over or turn down side streets to get out fo the way.  Finally, and suddenly, the red Honda turned abruptly to the left onto Crescent Street and turned left to stop at an angle.

The cruisers followed, Officer Coyne's car pulling in front and the other cruiser pulling behind.  As Officer Coyne was getting out of his cruiser, the driver made a movement down to the left-hand side, dropping out of Officer Coyne's view. Concerned, among other things, that the driver might be reaching for a weapon, Officer Coyne alerted Officers Powell and Blando of what he had seen, and they took up cover positions while Officer Coyne had the driver, who proved to be the defendant, get out of the car.

Officer Coyne conducted a pat frisk and did not feel any weapons.  Officer Coyne asked the defendant for his name, and the

4

defendant responded, "Anthony Jones," along with an address and a date of birth.  The other officers stayed with the defendant while Officer Coyne ran the information through his mobile data terminal and determined that no such person was licensed to drive in Massachusetts.

At around this time, another police vehicle from another district arrived in order to speak with Officer Coyne.  As they got out of their vehicle, one of the officers – Officer Roby – said, in substance, "Hey, that's Matthew Vickers."  Officer Coyne went back to the mobile data terminal, this time using the name "Matthew Vickers" along with the date of birth and address the defendant had earlier provided.  Officer Coyne learned that the defendant's license had been suspended and there were two warrants for his arrest on pending criminal matters (one of which involved state charges initially brought against the defendant based on the May 14, 2001 incident).

The defendant was placed under arrest, handcuffed, and put into the rear of the cruiser Officers Powell and Blando were using.  As the defendant was seated in this location, Officer Powell noticed a large white object either in his mouth or covering his lips.  Officer Powell approached to investigate, and observed that the object was no longer there when he arrived.  Officer Powell told the defendant to open his mouth, but instead the defendant appeared to try to swallow something.  Officer

5

Powell placed two fingers against the defendant's throat to prevent this, and after several seconds the defendant spat out a bag containing thirteen smaller bags containing a white, rock-like substance.  Officer Powell reached in to retrieve the bag, which had fallen by the defendant's left foot, and he saw a second plastic bag lying there, this one containing twenty smaller bags of a white, rock-like substance.  (The substance has since tested positive for cocaine base, or crack cocaine.)  Officers Powell and Blando had transported a homeless man to a shelter a short time previous to this, and a search of the car at that time had revealed no such contraband.

The defendant, in his affidavit, maintains that he pulled over at the first available opportunity.  He does not say one way or the other whether he had been in possession of the crack cocaine with which he is charged.

## **ARGUMENT**

**I.   THE MOTION RE: MAY 14, 2001 SHOULD BE DENIED WITHOUT A HEARING**

A criminal defendant is not entitled, as a matter of right, to an evidentiary hearing on every motion that he chooses to file.  <u>United States v. Staula</u>, 80 F.3d 596, 603 (1st Cir. 1996).  "A hearing is required only if the movant makes a sufficient threshold showing that material facts are in doubt or dispute, and that such facts cannot reliably be resolved on a paper

record." Id. at 603.  In particular, evidentiary hearings on motions to suppress are required only when a defendant makes a sufficient showing that an illegal search has occurred.  United States v. Lewis, 40 F.3d 1325 (1st cir. 1994).  "To make this showing the defendant must allege facts, sufficiently definite, detailed, and nonconjectural to enable the court to conclude that a substantial claim is presented."  Id.

Here, the defendant has failed to meet this standard with respect to the events of May 14, 2001.  In support of his claim that the recovery of the bag containing the drugs was unconstitutional, the defendant admits that he kept driving when the police were following him with flashing lights; admits that he ran when he stopped his car in Magnolia Square; and admits that, according to the police, he had discarded the bag containing the drugs before the police apprehended him.  Because, as shown below, the facts the defendant admits, together with those he does not deny, plainly show that suppression is unwarranted, the defendant's motion as to the May 14, 2001 incident should be denied without a hearing.

**II.  Under Hodari D., the May 14, 2001 Seizure Was Proper**

In California v. Hodari D., 499 U.S. 621 (1991), the Supreme Court held that a seizure does not occur for Fourth Amendment purposes unless the police either apply physical force or a defendant submits to an assertion of police authority.  Here, by

his own admission, the defendant continued to drive, and then ran, when the police attempted to assert their authority. By the time the police apprehended him, he had already abandoned the bag containing the cocaine.

This case is thus virtually on all fours with <u>Hodari D.</u> There, the Supreme Court stated:

> [A]ssuming that [an officer's] pursuit [of Hodari] constituted a "show of authority" enjoining Hodari to halt, since Hodari did not comply with that injunction he was not seized until he was tackled. The cocaine abandoned while he was running was in this case not the fruit of a seizure, and his motion to exclude evidence of it was properly denied.

<u>Hodari D.</u>, 499 U.S. at 629. One could simply replace the name "Hodari" with the defendant's name in this passage, and it would reflect both what happened in this case and the legal consequences flowing therefrom. <u>See</u> <u>also</u> <u>United States v. Sealey</u>, 30 F.3d 7, 10 (1st Cir. 1994)("Because the contraband discarded by [the defendant] while he was running [from the police] was not the fruit of his seizure, the act of abandonment extinguished his Fourth Amendment claim.").

The defendant argues that this evidence must be suppressed because "the defendant was seized within the meaning of the Fourth Amendment prior to the observation of any contraband in plain view." Defendant's Memorandum ("Def. Mem.") at 8. As the materials appended to the Motion make clear, however, the

—

officers saw the defendant throw *something* while he was running,[1] even if they did not retrieve it until they had restrained the defendant. Even more to the point for Fourth Amendment purposes, however, by the time the defendant was restrained, he had already abandoned the cocaine. He had thus, by his own actions, extinguished any Fourth Amendment claim he had with respect to the cocaine. See Sealey, 30 F.3d at 10.[2]

As noted above, because the defendant either admits or does not contest the facts relevant to the resolution of this prong of his Motion, it should be denied without a hearing.

**III. The October 19, 2003 Search Was Valid as Incident to Arrest**

As the defendant recognizes, the Supreme Court's decision in Delaware v. Prouse, 440 U.S. 648 (1979), justifies the stop of a car the driver of which has committed a traffic violation. Here,

---

[1] The defendant argues that the police had no basis to stop his car on May 14, 2001. Def. Mem. at 11. Under Hodari D., however, it is plain that the officers did not stop the Honda Civic for Fourth Amendment purposes when the defendant, having driven down a dead-end street, abandoned it. Rather, it is clear that the defendant, rather than submitting to authority by stopping the Honda, was simply continuing his flight on foot. Moreover, the police did have a basis for stopping the car in any event, as failing to pull over for a police vehicle is, in fact, a traffic infraction. See M.G.L. c. 89, § 7A (restriction on use of ways upon approach of emergency vehicles).

[2] Moreover, while not necessary to the analysis, the police plainly had a reasonable suspicion that criminal activity was afoot when, as they were chasing the defendant, they saw him throw something on the ground, and they were acting well within their authority in stopping the defendant to investigate what he was doing. See Terry v. Ohio, 392 U.S. 1 (1968).

the defendant had failed to pull over for a police cruiser that had activated its siren, flashing lights, and air horn.  A failure to pull over in such a circumstance is, in fact, a traffic violation.  See M.G.L. c. 89, § 7A.[3]  By driving several blocks at 3:00 in the morning before abruptly turning left, the defendant violated this statute and the police acted well within their authority in approaching him once he finally had stopped.

Once they approached, the police were entitled to ask for the defendant's license and registration and identifying information and to run a computer check.  See United States v. DeWitt, 946 F.2d 1497, 1501-02 (10th Cir. 1991).  The defendant could produce no license and a computer check showed no license issued in the pseudonym he provided.  When, as this scenario was unfolding, other officers arrived who knew the defendant, the police were eminently justified in running a fresh computer check with the defendant's true name, and in arresting the defendant when this check disclosed outstanding arrest warrants in two criminal cases, together with the other offense (driving with a suspended license, etc.) That the defendant had committed in the

---

[3]This statute provides, in part, that "[u]pon the approach of any fire apparatus, police vehicle, ambulance or disaster vehicle which is going to a fire or responding to call, alarm or emergency situation, every person driving a vehicle on a way shall immediately drive said vehicle as far as possible toward the right-hand curb or side of said way ans shall keep the same at a standstill until such fire apparatus, police vehicle, ambulance or disaster vehicle has passed."

presence of the officers.

It is, of course, well-established that the police may search a defendant incident to arrest.  E.g. New York v. Belton, 453 U.S. 454, 461 (1981); United States v. Uricoechea-Casallas, 946 F.2d 162, 165 (1st Cir. 1991).  Thus, had the police recovered the two bags of crack cocaine directly from the defendant's person, their actions would have been fully consonant with the Fourth Amendment.  Given that, in fact, both bags of crack were ultimately seized after they were observed in plain view (the first as the defendant was in the process of swallowing it, and the second when, in the process of retrieving this bag after the defendant had spat it out, Officer Powell saw a second bag lying near the defendant's feet), the officers actions were well within the bounds of the Constitution.

## **CONCLUSION**

Accordingly, for the foregoing reasons, this Court should deny the Motion in its entirety.

                                Respectfully submitted,

                                MICHAEL J. SULLIVAN
                                United States Attorney

        By:

                                /s/ Robert E. Richardson
                                ROBERT E. RICHARDSON
                                Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

Suffolk, ss.:                                    Boston, Massachusetts
                                                 June 18, 2004

    I, Robert E. Richardson, hereby certify that I caused a true and correct copy of the foregoing to be served by electronic filing this date on Timothy Watkins, Esq., Federal Defender Office, 408 Atlantic Avenue, 3rd Floor, Boston, MA 02210, counsel for the defendant Matthew Vickers.


                                                 /s/ Robert E. Richardson
                                                 ROBERT E. RICHARDSON